IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TIMOTHY JOHN O'MALLEY,

     Plaintiff,

v.                                      CASE NO. 1:07-cv-00228-MP-GRJ

WALTER McNEIL,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Doc. 1, a petition for a writ of habeas corpus under 28 U.S.C. § 2254. The petition arises from Petitioner's 2002 *nolo contendere* plea to one count of sexual battery with threat of force likely to cause personal injury, for which Petitioner received a 30-year sentence as a prison releasee reoffender. Upon due consideration of the petition, the response, the state-court record contained in Respondent's Appendix, and Petitioner's reply, the Court recommends that the Petition be denied.[1]

## Background

Petitioner was charged by information with one count of sexual battery by use of force likely to cause serious personal injury (Count I), and one count of false imprisonment (Count II). App. Exh. O. Pursuant to a plea agreement, on December 12, 2002, Petitioner pleaded *nolo contendere* to the lesser included offense in Count I of

---

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

sexual battery by threat of force likely to cause serious personal injury; the remaining count was dismissed. *Id*. Exh. N. At Petitioner's change-of-plea hearing, Petitioner testified under oath as to the basis for his plea. Under questioning by his appointed counsel, Petitioner confirmed that he was 36 years old, and had completed school through grade 11. Petitioner stated that he understood that the State was making a "no deposition" plea offer, and that he understood he was waiving his rights to go to trial, to confront and cross-examine witnesses, and to testify on his own behalf. Petitioner testified that he understood he faced a 30-year mandatory-minimum sentence as a prison releasee reoffender. Petitioner advised the Court that he was taking the medications Thorazine, Lithium, Benadryl, and Wellbutrin. He confirmed that he had been evaluated by a doctor and found competent to enter a plea, and he testified that he agreed that he was competent to enter a plea. Petitioner testified that he was waiving the right to present an insanity defense. He agreed that his counsel had done a competent job in advising him and in representing him, and that he was entering his plea freely and voluntarily because he believed it was in his best interest. Petitioner expressed that he understood that, at the end of his sentence, he could be subject to civil commitment under the Jimmy Ryce Act.

The court then explained to Petitioner that a "pre-deposition plea offer" meant that Petitioner's counsel had not fully investigated the case, and that Petitioner was accepting the plea offer with the understanding that his counsel would not take any witness depositions. The court inquired whether there was any investigation that Petitioner believed his counsel should have performed, and Petitioner responded "no." Petitioner stated that there were no witnesses that he wanted his counsel to interview,

and then he stated "I believe he's done a very, a great job in the short amount of time."

The court then inquired as to whether Petitioner's medications affected his ability to

make an intelligent decision, and Petitioner responded that they did not. The court

asked whether Petitioner had any questions about the Jimmy Ryce Act, and Petitioner

stated: "No, your Honor. I would like to ask, though, if, because of the victim, what she

all went through and everything, is you could recommend I go to PRIDE where I could

pay for her mental health therapy and counseling for her and any kind of restitution

that's permitted."

   The prosecutor then reviewed the factual basis for the plea, stating as follows:

> Having proceeded to trial, the state would have been ready
> to show as to 2002-1904-CFA, Timothy John O'Malley
> committed the offense of sexual battery by threat of force or
> violence likely to cause serious personal injury, as evidence
> by the fact that while he was in Alachua County, Florida, on
> or about May 19th of 2002, he did then and there commit a
> sexual battery upon [the victim], a person 12 years of age or
> older, without the consent of the [the victim]. He committed
> the sexual battery as evidenced by the fact that his sexual
> organ penetrated or had union with the vagina of [the victim]
> and /or the sexual organ penetrated the mouth or had union
> with the mouth of [the victim] and/or he digitally penetrated
> the vagina of [the victim]. During the course of the sexual
> battery, he threatened force to [the victim] in the form of
> threatening her life, threatening that she would die, and in
> the process was choking her.

The court found the factual basis adequate to support the plea. The court also

permitted the prosecutor to play a taped statement provided by the victim, in which she

recounted in detail the attack by Petitioner, following which the court reiterated that

there was a factual basis for the plea. The court sentenced Petitioner to 30 years'

imprisonment, to be served day for day with no gain time. *Id*.

Petitioner did not seek direct review of his conviction or sentence. In May 2003, Petitioner filed a *pro se* petition for belated appeal pursuant to Fla. R. App. P. 9.141(c). Following a hearing on Petitioner's asserted entitlement to file a belated appeal due to his counsel's alleged failure to follow his instructions to appeal, counsel was appointed for Petitioner and a second hearing was scheduled. At that second hearing, Petitioner's counsel advised the court that Petitioner wished to dismiss his petition for belated appeal, and accordingly the petition was dismissed. App. Exh. O at 240-42; P.

In March 2004, Petitioner filed a Rule 3.850 motion for postconviction relief, asserting as grounds that his plea was not knowing and voluntary because of the effects of "psychotropic medications" (Ground 1), and that his trial counsel rendered ineffective assistance for failing to adequately investigate the charges, failing to adequately advise Petitioner regarding the elements of the offense, and failing to advise Petitioner regarding possible defenses (Ground 2). App. Exh. L. The trial court summarily denied relief on Ground 1, finding that the record of Petitioner's plea colloquy conclusively refuted his claim that his plea was not knowing and voluntary due to medication. *Id*. at 68-70. The court conducted an evidentiary hearing on Petitioner's ineffective-assistance claims, at which Petitioner was represented by appointed counsel. App. Exh.M. At the beginning of the hearing, an issue arose regarding Petitioner's competency to proceed with the hearing due to a lack of medication, which allegedly hindered his ability to recall events. Petitioner's counsel also stated that Petitioner's mother had raised an issue about his mental health. Counsel stated that Petitioner was requesting a continuance so that he could be put back on his medication, and he also wanted his counsel to obtain the prosecution's "discovery

notes." *Id*. at 3-4. Counsel advised Petitioner that the issues to be resolved at the hearing were simple and did not require much evidence. The court denied Petitioner's motion for a continuance.

Petitioner's trial counsel, John Whitaker, testified that he recalled meeting with Petitioner in person at least twice, and had numerous phone conversations with Petitioner. Mr. Whitaker testified that the State had made Petitioner a plea offer prior to Mr. Whitaker's appointment, but that the offer was revoked based on Petitioner's criminal history. Petitioner indicated a desire for a plea offer because he did not want to put the victim through a deposition, and counsel advised Petitioner that generally the best plea offer would be made prior to the victim's deposition. Mr. Whitaker testified that at that point he still did not have "full information" about the case, but he did discuss with Petitioner his desire to receive treatment and not put the victim through a deposition. Mr. Whitaker discussed the charges with Petitioner, and Petitioner was aware that based on his criminal history he was facing life imprisonment if convicted at trial of the original charges. Mr. Whitaker testified that although he did not go through the elements of the offense "line by line through a jury instruction," he discussed with Petitioner the facts that had been alleged, such as Petitioner having allegedly used a knife and choking the victim during the attack. At that time, the facts that had been presented to Mr. Whitaker were that Petitioner had met the victim at a gay bar and had taken her to his brother's house to meet his brother's wife. An argument ensued and Petitioner subsequently took the victim to a different location and sexually battered her. Mr. Whitaker understood that the physical evidence supported the allegations against Petitioner, although he did not have all of the physical evidence. Mr. Whitaker denied

having any concerns about Petitioner's ability to understand the charges. He recalled

discussing an insanity defense with Petitioner, but Petitioner decided he did not want to

do that because to pursue the defense would require that the victim's deposition be

taken. The mental health consultation ordered by the trial court had resulted in a

determination that Petitioner was competent to proceed. In addition to the insanity

defense, counsel discussed a consent defense with Petitioner, but the physical

evidence and other facts, including the fact that the victim was a gay woman, made a

consent defense "very difficult." Mr. Whitaker testified that Petitioner told him he had

"done this before," and thus there might be an issue at trial regarding similar fact

evidence, but he did not investigate Petitioner's prior case "because of what [Petitioner]

wanted me to do and based on what he told me in terms of he said he wanted to get

treatment and that he had a problem." Mr. Whitaker testified that on the morning of

Petitioner's plea the State disclosed that the victim had been committed under the

Baker Act, and Mr. Whitaker advised Petitioner that the victim might not have been

competent to testify. Mr. Whitaker recalled that that fact was discussed in the plea

colloquy. *Id.* at 13-20.

   On cross-examination by Petitioner's counsel, Mr. Whitaker testified that he had

less than two months of felony experience when he took on Petitioner's case, but that

he received assistance from the experienced partners in his firm. Mr. Whitaker recalled

that Petitioner told him the state had made an initial plea offer, but then had withdrawn

it, and Petitioner told Mr. Whitaker to "see what you can do." Petitioner knew that he

was facing a life sentence as a prison releasee reoffender. Mr. Whitaker understood

that the state had sought to obtain a DNA sample from Petitioner, but DNA evidence

was not developed prior to the plea. He was unaware of any eyewitnesses to the assault. Mr. Whitaker testified that after Petitioner told him to try to negotiate a plea, he went immediately to the prosecutor to negotiate. No depositions were ever taken in the case, and Petitioner never requested that any depositions be taken. At Petitioner's request, Mr. Whitaker's representation focused on obtaining a plea offer and negotiating the specific terms, rather than challenging the facts of the case. Mr. Whitaker did not keep a record of the number of times he met with Petitioner in person. Mr. Whitaker did not recall that Petitioner ever had any problems understanding him or communicating with him. Petitioner never asked Mr. Whitaker to appeal, and expressed that he understood what was going on and was satisfied with the outcome. He did indicate that he would go to trial if he did not get some of the things he wanted in the plea negotiations, such as placement in the PRIDE program, but Mr. Whitaker explained to Petitioner that the judge did not have the authority to order that. Mr. Whitaker had been shown the video from Petitioner's initial interview with law enforcement in which Petitioner claimed that his contact with the victim was consensual. Mr. Whitaker acknowledged that the victim was the only person who could have testified to that, but, at Petitioner's request, he did not depose her and if he had deposed her the plea offer would have been withdrawn. Mr. Whitaker "absolutely" believed that Petitioner understood the ramifications of not deposing the victim, because he told Mr. Whitaker that "I don't want to put the victim through that." *Id*. at 20-29.

Petitioner testified that he was represented by Matthew Wells of the Public Defender's office for five to six months before Mr. Whitaker was appointed. Mr. Wells

told Petitioner that the prosecutor made a plea offer of no more than 10 years imprisonment. Mr. Whitaker was appointed after Mr. Wells left the Public Defender's office, and a different prosecutor also took over the case. Petitioner recalled meeting twice with Mr. Whitaker in person. Petitioner testified that Mr. Whitaker did not advise him that he was facing a life sentence; he thought he was facing no more than 10 to 15 years. Petitioner testified that he believed Mr. Whitaker rendered ineffective assistance because he did not point out "key elements" in the discovery that the "law clerks" in prison later pointed it out to him. That discovery included his statement, the police report, witness statements, the victim's medical reports, and crime scene photos, all of which Petitioner testified he now believed would have been sufficient to establish a defense at trial. Petitioner conceded that he had all of this information in his possession prior to Mr. Whitaker's appointment. Petitioner testified that he could not recall telling Mr. Whitaker that he wanted to enter a plea and that he did not want him to take depositions. Petitioner testified that he did not talk to Mr. Whitaker about a consent defense. Petitioner stated that he wrote the trial judge letters asking to go to trial, prior to Mr. Whitaker's appointment.

On cross-examination, Petitioner testified that the plea agreement was not read to him line by line, and was not clearly explained to him, although he conceded that he initialed and signed, under penalty of perjury, that he had read, understood, and agreed with the terms of the agreement. Petitioner identified three letters that he sent the prosecutor prior to Mr. Whitaker's appointment in which Petitioner requested a plea offer. Petitioner protested that he had sent other letters asking to go to trial. He conceded that Mr. Wells had provided him with the discovery materials, but that he did

not read them.  Petitioner conceded that he told the court during the plea colloquy that he was happy with Mr. Whitaker's representation, but stated that if Mr. Whitaker had explained the discovery materials to him he would have gone to trial.  The court afforded Petitioner an opportunity to address the court directly concerning his claims, and Petitioner asked the court to hold another evidentiary hearing to give his attorney time to prepare statements and documents.  *Id*. at 29-44.

The court determined that the evidence adduced at the hearing was sufficient to find that Mr. Whitaker did not render ineffective assistance.  The court stated that "[i]t's pretty clear from the evidence brought out by way of testimony and the documentary evidence that [Petitioner] wanted and was actively trying to procure a plea agreement. It's very clear from the plea colloquy . . . .  So it's – it's a lot disingenuous now to come back and say, well, he didn't do a very good job of investigating when it was made clear to him that this was a pre-deposition offer and he wanted to take it.  And the letters established that he . . . was actively cultivating an opportunity for a plea agreement. And now to sit back and say, well, I didn't really understand the papers, none of that is revealed by the evidence I've heard; none of that is revealed by the cold hard record of the plea colloquy . . . .  [I]t just sounds very disingenuous for you to make that assertion now in light of what the record shows that you said back then."  The court concluded that "I find that there is no basis to make any finding of inadequate representation by Mr. Whitaker and that the plea, in fact, was freely, knowingly, and voluntarily entered by [Petitioner] despite that he now comes to a new understanding after talking to a law clerk at the institution where he is housed."  *Id*. at 44-45.  The court entered an order denying the motion on March 29, 2006, noting that Petitioner failed to establish

ineffective assistance under the *Strickland*[2] standard.  App. Exh. L at 78-80.  The First

District Court of Appeal affirmed, *per curiam*, without opinion.  *O'Malley v. State*, 963

So.2d 232 (Fla. 1st DCA 2007) (Table).  The instant petition followed.[3]

### Petitioner's Claims

Petitioner contends that he is entitled to federal habeas relief on the following

grounds: (1) his plea was not knowing and voluntary because he was taking

psychotropic medications at the time of his plea; (2) his trial counsel rendered

ineffective assistance for failing to investigate and advise Petitioner of possible

defenses, including a defense based on Petitioner's mental status and the fact that both

Petitioner and the victim were under the influence of crack cocaine and alcohol, and

were both committed under the Baker Act; and (3) the trial court erred by sentencing

Petitioner without first having him examined by two psychiatrists, and by not having him

examined by a psychiatrist prior to the evidentiary hearing on his postconviction motion.

Doc. 1.

### Standard of Review

Under 28 U.S.C. § 2254, a federal court may grant habeas corpus relief only if

the state court adjudication:

> (1)    resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State

---

[2]*Strickland v. Washington*, 466 U.S. 668 (1984).

[3]The Court previously determined that the Petition was timely filed, and the Respondent concedes that Petitioner's claims were exhausted in the state courts.  Docs. 16, 18.

court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d), "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "A state-court decision will certainly be contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*, 529 U.S. at 405. A state-court decision will also be contrary to clearly established Supreme Court precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." *Id*. at 406.

Under the "unreasonable application" clause of § 2254(d), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. The federal court considering a habeas petition "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 412.

Settled circuit court precedent interpreting Supreme Court decisions is not determinative of clearly established federal law. Instead, this Court must look to the specific holdings of Supreme Court cases themselves. If the Supreme Court has not

issued a specific holding on the issue at hand, then the state court's decision is not contrary to or an unreasonable application of clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 76 (2006).

Further, in reviewing the decision of the state court, this Court must presume that the state court's factual determinations are correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Parker v. Head*, 244 F.3d 831, 835-36 (11th Cir. 2001).

The fact that the appellate court does not write "an opinion that explains the state court's rationale," does not detract from the deference owed to that court's decision. *Wright v. Sec., Dept. of Corr.*, 278 F.3d 1245,1255 (11th Cir. 2002). Under § 2254, the Court is to focus on the result of the state proceeding, not the reasoning underlying it, since all that is required for a state-court adjudication on the merits is a rejection of a claim on the merits, not an explanation. *Id.* at 1254-55.

Furthermore, a habeas petition grounded on issues of state law provides no basis for habeas relief, as a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution. *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989). This limitation on federal habeas review applies equally when a petition which truly involves only state law issues is couched in terms of alleged constitutional violations. *Branan*, 861 F.2d at 1508; *see also Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3rd Cir. 1997) (errors of state law cannot be repackaged as federal errors simply by citing the United States Constitution).

## <u>Ground (1) Voluntariness of Plea</u>

By entering a voluntary plea, a defendant waives several rights, including the right to a jury trial, to the assistance of counsel, to raise a defense, and to confront his accusers. *Boykin v. Alabama*, 395 U.S. 563, 573 (1989). Further, a voluntary and intelligent guilty plea forecloses federal collateral review of alleged constitutional errors preceding the entry of the plea. *See Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973); *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992). A plea of nolo contendre is recognized as the equivalent of a guilty plea in Florida. *See* Fla. R. App. P. 9.140(b)(2).

The trial court made a finding that Petitioner's plea was knowing and voluntary, and a review of the state court record, in particular of the written plea agreement and plea colloquy, supports that finding. *See* App. Exh. O, N. On collateral review, the state court rejected the argument that Petitioner's plea was not knowing and voluntary because Petitioner was under the influence of psychotropic medications. App. Exh. L. This finding was based on Petitioner's statements under oath at the plea colloquy that although he was taking medications, such medications had no effect on his ability to understand the charges against him or to enter a plea. *Id*. (citing *Kirby v. State*, 733 So.2d 1054 (Fla. 1st DCA 1999) (record of plea colloquy conclusively refutes claim that medication adversely affected knowing and voluntary nature of plea where defendant tells the court that the medication does not have an adverse effect)). "[T]he representations of the defendant [at the plea hearing], as well as any findings by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity.

The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

In this instance, Petitioner's sworn testimony in open court that his medications did not have an adverse effect on his ability to enter a plea "carry a strong presumption of verity." *Id.* Petitioner points to nothing beyond his self-serving and conclusional assertions in support of a contrary finding. Petitioner has thus failed to demonstrate that the state court's determination that his plea was knowing and voluntary reflects an adjudication that is either contrary to, or an unreasonable application of, Federal law or an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1) and (d)(2). Accordingly, Petitioner has not demonstrated that he is entitled to habeas relief on his Ground (1), in which he alleges that his plea was involuntary due to the influence of psychotropic drugs.

## Ground (2) Ineffective Assistance of Counsel

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697. The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

Petitioner's knowing and voluntary plea waived any claims stemming from events

alleged to have occurred prior to the plea, including claims of ineffective assistance of counsel that do not implicate the validity of the plea. *See United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000) (pre-plea claim of ineffective assistance waived). Thus, in the guilty plea context, to show prejudice under *Strickland* a Petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The state court rejected Petitioner's ineffective-assistance claims on collateral review because the testimony at the evidentiary hearing and at the plea colloquy, and Petitioner's plea agreement, established that Petitioner had actively pursued a plea and fully understood that the state's offer was for a pre-deposition plea that would not necessitate any further investigation of the case by Mr. Whitaker. App. Exh. L, M. In making this finding, the state court specifically found that Petitioner's testimony that he did not want a plea and requested further investigation as to possible defenses was "unreliable and disingenuous." App. Exh. L. The state court's findings as to witness credibility are presumptively correct. *See Brown v. Head*, 272 F.3d 1308, 1314 (11th Cir. 2001). Other than the self-serving testimony found to lack credibility by the state court, Petitioner points to nothing in the record that would support a finding that he would not have entered a plea but for counsel's alleged failure to investigate potential defenses. Under these circumstances, Petitioner has failed to show that the state court's rejection of his ineffective-assistance claim was either contrary to, or an unreasonable application of, Federal law or an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1) and (d)(2).

## Ground (3) Alleged Trial Court Errors Regarding Competency

Petitioner contends that the trial court erred by accepting Petitioner's plea without first having him examined by more than one psychiatrist pursuant to Fla. R. Crim. P. 3.210, and by not having him examined by a psychiatrist prior to the evidentiary hearing on his postconviction motion.[4]  As to the first part of this claim, state court errors in the application of state law are not cognizable on federal habeas review, absent a showing of federal constitutional error.  See 28 U.S.C. § 2254(a); *Coleman v. Thompson*, 501 U.S. 722, 730, (1991).   Petitioner makes no showing of federal constitutional error with regard to his competency.  "[T]he standard for determining whether a trial court violates the Due Process Clause by failing to conduct an inquiry into a defendant's competency to stand trial, where no inquiry is requested, is whether the objective facts known to the trial court at the time create a bona fide doubt as to mental competency." *Wright v. Sec'y Dept. of Corr.*, 278 F.3d 1245, 1256 (11th Cir. 2002) (citing *Drope v. Missouri*, 420 U.S. 162, 180 (1975)).   At his plea colloquy, Petitioner testified under oath that he had been found competent to proceed in the case following examination by one expert, and he agreed that he was competent to proceed with his plea.  App. Exh. N.  Petitioner made no request for any further competency examination.   Petitioner points to no objective facts in the record before the trial court

---

[4]Although the Respondent has conceded that all of Petitioner's claims were exhausted in state court, exhaustion may be questionable as to this claim because it does not appear that Petitioner raised it in his Rule 3.850 motion.  *See* App. Exh. L.  Petitioner did raise this claim in his appeal from the denial of his Rule 3.850 motion, in the *pro se* brief that he filed after his appointed counsel moved to withdraw from the appeal pursuant to *Anders v. California*, 386 U.S. 738 (1967).  App. Exh. T.  Because it is clear that Petitioner has presented no ground for federal habeas relief in this claim, the Court may deny it notwithstanding any failure to exhaust. 28 U.S.C. § 2254(b)(2).

that create a bona fide doubt as to his competency to proceed with his plea, such that there was any federal constitutional basis for the trial court to have Petitioner examined by a second expert. *See id*. Petitioner's claim that the state court erred by not requiring a psychiatric examination prior to the postconviction evidentiary hearing is not cognizable on federal habeas review, the scope of which extends only to constitutional errors that allegedly taint a Petitioner's trial or guilty-plea hearing. *See*, *e.g.*, *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997) ("[I]nfirmities in state habeas proceedings do not constitute grounds for relief in federal court."); *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself."). Accordingly, Petitioner has failed to show that the state court's rejection of this claim was either contrary to, or an unreasonable application of, Federal law or an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1) and (d)(2).

Accordingly, for the foregoing reasons it is respectfully **RECOMMENDED** that the petition for a writ of habeas corpus be **DENIED,** and that a certificate of appealability be **DENIED**.

**IN CHAMBERS** this 21st day of September 2010.


*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.